**In re HUDSON HOLDING ASSOCIATES, Debtor.**

**HUDSON HOLDING ASSOCIATES, Plaintiff,**

v.

**Anthony RIFINO, Defendant.**

**Bankruptcy No. 86 B 20402. Adv. No. 87 Adv. 6101.**

United States Bankruptcy Court, S.D. New York.

Feb. 2, 1988.

Jeffrey L. Sapir, Hartsdale, N.Y., for debtor.

Reich and Reich, White Plains, N.Y., for Anthony Rifino.

## DECISION ON COUNTERCLAIM FOR SPECIFIC PERFORMANCE

### HOWARD SCHWARTZBERG, Bankruptcy Judge.

The defendant, Anthony Rifino ("Rifino"), has filed a counterclaim for specific performance of an option to purchase residential property which he rented from the Chapter 11 debtor, Hudson Holding Associates. The debtor had commenced an adversary proceeding against Rifino to set aside the purchase option extended by the debtor to Rifino in a written lease on the ground that it was given for an antecedent debt which the debtor owed to Rifino and, as such, constituted an avoidable preferential transfer under 11 U.S.C. § 547(b). At the trial, the debtor withdrew its complaint with respect to the alleged preferential transfer. Rifino then proceeded with his counterclaim for specific performance of his option to purchase the premises which he rented.

### FINDINGS OF FACT

1. On August 29, 1986, an involuntary petition for relief under Chapter 11 of the Bankruptcy Code was filed against the debtor, Hudson Holding Associates. Thereafter an order for relief was entered on September 30, 1986.

2. The debtor is a limited partnership, with real estate investments. Its president and managing general partner was Ivan Barnhard from its inception in 1975 to September 1, 1986. After the commencement of the debtor's Chapter 11 case, at which time Gerald P. Hirsch became the managing partner. Ivan Barnhard is a Yonkers School Administrator.

3. The debtor, Hudson Holding Associates, is in the business of owning and renting approximately nineteen one-family houses. One of these houses is located at 5 North Circle, Stony Point, New York.

4. Gerald D. Hirsch, who is a school teacher, and a licensed real estate broker and manages properties for others, was one of the partners of the debtor when it was formed. On July 25, 1977, Hirsch executed a power of attorney to Ivan Barnhard, the president and managing partner of the debtor to act as his attorney in fact with respect to "real estate transactions". (Exhibit # 10). This power of attorney continued in force until May 9, 1984, when Hirsch filed a revocation of the power of attorney with the Rockland County Clerk's Office where the power of attorney had originally been filed.

5. Anthony Rifino, who resides at 5 North Circle, Stony Point, New York, in one of the houses owned by the debtor, is a shop teacher in the Yonkers School System. Rifino was retained by Ivan Barnhard in the early 1970's on behalf of the debtor to act as superintendent and perform repair work on the houses owned by the debtor. In exchange, Rifino was permitted to reside as a tenant at 5 North Circle, Stony Point, New York.

6. On June 1, 1983, a written lease was entered into between the debtor, as landlord, and Rifino, as tenant, for the Stony Point premises for a term of three years, commencing June 1, 1983 and ending May 31, 1986, for a monthly rental of $485.00, with a security deposit of $425.00. (Exhibit # 1). The lease was signed by Ivan Barnhard, as president of the debtor, and by

Rifino as tenant. Paragraph # 33 of this lease states:

> The Landlord grants the right to purchase the above described properties to the tenant, during the term of this lease at fair market value.
>
> The price of the house shall be reduced by the money loaned to Hudson Holding Associates.
>
> (Fair market value minus the money loaned to Hudson Holding Associates equals the net price for the sale of the house).

7. On June 1, 1986, another written lease was entered into between the debtor, as landlord, and Rifino, as tenant, for the Stony Point premises for a term of three years, commencing June 1, 1986 and ending May 31, 1989, for a monthly rental of $600.00, with a security deposit of $425.00. (Exhibit # 2). As in the case of the earlier lease, this lease was signed by Ivan Barnhard, as president of the debtor, and by Rifino as tenant. Paragraph # 33 of this lease contained language identical to the terms included in paragraph # 33 of the earlier lease; in effect granting Rifino the right to purchase the leased property at the fair market value, reduced by the money loaned to the debtor.

8. Rifino testified that the reference in the leases to a credit against the purchase price of his house for the amount of loans made to the debtor was inserted because in October or November of 1980 Ivan Barnhard, as president of the debtor, discussed with Rifino the concept of loans that Rifino could make to the debtor at attractive interest rates. Rifino said that he was informed by Barnhard that Rifino could lend money to the debtor and put that money towards a fund to purchase the leased house. Rifino testified that Barnhard said that Rifino, his fiancee, Vivianna Irizarri, and his family could make loans to the debtor at attractive interest rates.

9. Rifino testified that Barnhard informed him that the debtor was in the business of owning and renting single family houses and also acted as an investment club whereby people advanced funds to the debtor and earned attractive interest payments. Rifino said that he spoke to other teachers in the Yonkers School System who confirmed to him they dealt with Barnhard and made loans to the debtor and received substantial interest payments. Indeed, most of the investors and partners of the debtor were members of the Yonkers School System.

10. Rifino offered in evidence checks which he delivered to Barnhard for a loan to the debtor totalling $18,930. He also introduced checks issued by his fiancee, Vivianna Irizarri, payable to Barnhard as a loan to the debtor in the sum of $50,000. Rifino's cousin, Barbara Cellura, issued a check to Barnhard for $14,000 as a loan to the debtor. Rifino's father, Carl Rifino, issued three checks to Barnhard for the debtor in the total sum of $15,000. Additionally, Rifino's mother, Geraldine Rifino, delivered two checks to Barnhard, each for $5,000, for a total of $10,000. The total of the checks which Rifino introduced in evidence as having been delivered to Barnhard as loans to the debtor amounted to $137,-930. Although Rifino claims that he and his family advanced $215,000 to Barnhard as a loan to the debtor, he has been able to prove that a total of $137,930 was advanced. Evidence as to any additional sums was not produced.

11. Rifino offered in evidence six promissory notes signed by Barnhard on the debtor's letterhead whereby the debtor agreed to repay Rifino and members of his family for moneys advanced. The six promissory notes reflect a total sum of $111,000. There may exist additional promissory notes and checks, but they have not been produced.

12. Pursuant to a letter addressed to Gerald P. Hirsch, as president of the debtor, dated October 21, 1986, Rifino stated that he wished to exercise the option contained in his lease and to purchase his leased residence from the debtor. He stated:

> I wish to exercise my rights according to Sec. 33 of my current lease. I am *now* and *will be* very interested in the pur-

chase of this property when all this brouhaha is settled.

(Emphasis added). (Exhibit # 9).

■ 13. There was no evidence that Anthony Rifino's fiancee or his cousin or his mother and father consented to assign their claims against the debtor to him so that he could treat the funds advanced to the debtor by his fiancee and members of his family as owed to him. Absent such an assignment to him by Rifino's fiancee and family members, he may not regard moneys owed by the debtor to other individuals as owed to him for purposes of applying such funds towards his option to purchase his residence.

14. Each investor who advanced money to the debtor has a separate claim against the debtor. There is nothing in the option clause in paragraph # 33 of Rifino's lease which allows Rifino to credit loans advanced by other parties who have separate claims against the debtor to be added to the funds which Rifino personally loaned to the debtor.

15. Although Rifino filed a proof of claim against the debtor for $65,000 for monies advanced to the debtor, the proof in this case establishes that he advanced $22,000 to the debtor, as reflected by the promissory note on the debtor's letterhead dated March 1, 1984. (Exhibit B).

16. Other members of the Yonkers School System testified that they advanced monies to Ivan Barnhard, personally, and not to the debtor. They characterized their advances as investments entrusted to Barnhard, who was a highly regarded member of the Yonkers School System and an apparently successful businessman. These investors were to receive attractively high interest payments from Barnhard in exchange for their advances. However, none of those investors had promissory notes on the debtor's letterhead, nor did any of these investors have a written option which would allow them to credit their advances towards the purchase of a house owned by the debtor.

■ 17. Although the debtor was authorized by order of this court dated July 8, 1987 to reject Rifino's unexpired lease pursuant to 11 U.S.C. § 365, such rejection does not affect Rifino's right to enforce his claim for specific performance, based upon the post-petition exercise of his option in his letter dated October 21, 1986. (Exhibit # 9).

## DISCUSSION

Not only was Ivan Barnhard given a power of attorney by the current president and managing partner of the debtor, Gerald P. Hirsch, to act as his attorney in fact with respect to all real estate transactions, but Barnhard was cloaked with apparent authority to act on behalf of the debtor. He was the debtor's president and managing partner from its inception until the involuntary Chapter 11 petition was filed against the debtor with this court. The debtor was engaged in investments mainly in connection with the ownership and rental of single family houses. The debtor is a partnership comprised of investors, many of whom were members of the Yonkers School System. Ivan Barnhard was an administrator in the Yonkers School System. Many of the people who made loans to Ivan Barnhard were teachers in the Yonkers School System. Anthony Rifino, a tenant in one of the homes owned by the debtor partnership, is also a teacher in the Yonkers School System. Rifino seeks to exercise a written option in his lease with the debtor which allows him to purchase his leased residence at the fair market value, after receiving credit for loans advanced to the debtor.

The debtor argues that Barnhard's activities in obtaining loans from Rifino, his fiancee and members of Rifino's family were not authorized by the debtor. The debtor also disputes Rifino's right to exercise the option to purchase his residence from the debtor after receiving credit for the loans advanced.

■ The lease to Rifino from the debtor was clearly a real estate transaction within the apparent authority of Ivan Barnhard as president and managing partner of the debtor. Clause # 33 in the lease expressly refers to loans that the tenant might make

to the landlord. Accordingly, the parties contemplated that the tenant might wish to credit such loans towards his option to purchase his residence for the fair market value. The debtor is therefore responsible for Barnhard's conduct while acting within the scope of his apparent authority. The general rule in this regard is as follows:

> If an act done by an agent is within the apparent scope of authority with which he has been clothed, it matters not that it is directly contrary to the instructions of the principal; that latter will, nevertheless, be liable unless the third person with whom the agent dealt knew that he was exceeding his authority or violating his instructions.

3 New York Jur., Agency § 329. *See In re Perret*, 67 B.R. 757 at 773 (Bankr.N.D.N.Y. 1986). Indeed, even in those instances, where the agent is guilty of fraud, and acts solely to benefit himself, the principal remains liable for the conduct of the agent if the agent acts with apparent authority. *American Society of Mechanical Engineers, Inc. v. Hydrolevel Corporation*, 456 U.S. 556, 566, 102 S.Ct. 1935, 1942, 72 L.Ed. 2d 330 *reh. denied*, 458 U.S. 1116, 102 S.Ct. 3502, 73 L.Ed.2d 1379 (1982). This point was expressed by the late Judge Augustus Hand as follows:

> In such circumstances the ignorance of the principal and the fact that the agent is engaged in a fraud either upon his principal or a third party will not avoid liability.

*Standard Surety & Casualty Co. of New York v. Plantsville Nat. Bank*, 158 F.2d 422, 424 (2d Cir.1946), *cert. denied*, 331 U.S. 812, 67 S.Ct. 1203, 91 L.Ed. 1831 (1947).

■ There was no evidence that Rifino's fiancee or members of his family, none of whom were made parties to this action or ever appeared at the trial, agreed to assign their claims to Rifino. More importantly, there was no credible proof that the debtor ever agreed to credit Rifino's purchase option with funds advanced to it by individuals other than the named tenant, Anthony Rifino. Accordingly, Rifino is entitled to exercise his option to purchase his residence from the debtor, but he is only entitled to a credit against the purchase price for those funds which he proved were advanced, namely the $22,000, as referred to in the debtor's promissory note dated March 1, 1984. (Exhibit # 9).

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the persons in this case in accordance with 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding within the meaning of 18 U.S.C. § 157(b)(2)(C).

2. Rifino is entitled to specific performance of the option contained in paragraph # 33 of his lease with the debtor whereby Rifino is entitled to purchase the Stony Point, New York residence owned by the debtor for its fair market value.

3. In the exercise of such purchase option, Rifino is entitled to apply the sum of $22,000 which he proved he advanced to the debtor and which remains unpaid, as a credit against the purchase price.

4. Rifino shall arrange to schedule a hearing to be held for the purpose of taking proof as to the fair market value of the premises in question.

SETTLE ORDER on notice.